Argued April 17, decided April 29, rehearing denied July 29, 1913.

## STRODE v. SMITH.*

(131 Pac. 1032.)

**Damages—Liquidated Damages or Penalty.**

1. Unless the court can declare as a matter of law from an inspection of the contract sued on that the damages stipulated for therein are so excessive as to amount to a penalty, a demurrer to the complaint on the ground that it demanded enforcement of a penalty should be overruled, and the question determined after the answer is filed.

*Sum deposited to secure performance of contract as penalty or liquidated damages, see note in 38 L. R. A. (N. S.) 847. REPORTER.

**Damages—Liquidated Damages or Penalty.**

2.    The question whether a provision in a contract for damages is a penalty or liquidated damages must be determined upon the facts of each case; the intention of the parties must control, if that can be ascertained.

[As to contracts purporting to liquidate damages, see notes in 108 Am. St. Rep. 46; Ann. Cas. 1912C, 1021.]

**Principal and Surety—Construction—Intention of Parties.**

3.    The principal purpose of construing all contracts, including building bonds, is to ascertain the intention of the parties.

**Damages—Liquidated Damages or Penalty.**

4.    The intention of the parties controls in determining whether damages stipulated for are liquidated damages or a penalty, and if it satisfactorily appears that the damages were stipulated because the parties at the time anticipated the possible injury resulting from the breach, and fixed upon a reasonable sum to cover the damages resulting therefrom, such sum may be recovered as liquidated damages.

**Damages—Liquidated Damages or Penalty—Building Contracts.**

5.    A bond executed in connection with a lease provided for the future execution by lessee to the lessor of a $50,000 bond conditioned for the erection of a $100,000 building on the lot, and provided that, if the lessee failed to execute such bond, he would pay the lessor on demand $4,000 as liquidated damages, and recited as a reason for such stipulated damages that conditions of the city were favorable for securing advantageous leases, and by the execution of the lease in question lessee had tied the property up so as to lose many good opportunities of making advantageous leases, and that lessees were induced to execute the lease by reason of the provisions for the execution of the building bond, and because the damages were uncertain of estimation, and it might be claimed that the damages could not be estimated until after the expiration of the 35-year term, the sum of $4,000 was agreed upon by the parties as liquidated damages accruing from the failure to deliver the bond. *Held*, that it could not be said as a matter of law that the sum stipulated as for liquidated damages was in fact intended as a penalty.

**Landlord and Tenant—Improvements—Bond for Construction of Building.**

6.    A lease which required the lessee to execute a $50,000 bond for the erection of a building on the property not less than 65 days before the commencement of the removal of the old building therefrom was not indefinite as to the time of executing the $50,000 bond, where it also provided for the commencement of the new building within one year from the date of the lease.

**Landlord and Tenant—Improvements—Bond for Construction of Building.**

7.    Under a lease providing that a bond to be given by lessee to lessors for the construction of a building on the premises "shall be made to the lessors and in form and condition as they may desire and which must be satisfactory to them," lessors could only demand

a bond so framed that its conditions would include those specified in the lease, and so plain that there would be no probability of its non-enforcement because of its form, and could not arbitrarily refuse to accept a bond on the ground that it was not satisfactory to them, if, in fact, it met such requirements.

From Multnomah: HENRY E. McGINN, Judge.

Statement by MR. HENRY J. BEAN.

This is an action by Kate Strode, Rose Bridges, Anna Herrall, V. K. Strode and J. B. Bridges, Jr., against Frank E. Smith and the Pacific Surety Company.

The defendants appeal from a judgment in favor of plaintiffs for $6,000, damages for the breach of a bond.

The complaint, for the first cause of action, shows the following facts: On the 28th day of May, 1910, the plaintiffs executed a lease to defendant Frank E. Smith of a certain lot in the city of Portland, Oregon, for the term of 35 years. The lease contained 25 separate stipulations set forth at length in the complaint. The general provisions were: That the lessee should pay a monthly rental of $1,500 in advance, beginning on the 1st day of October, 1910, also all taxes, charges and assessments imposed on the property, including water rents, and the general taxes for the year 1910, which were to be paid on or prior to the 15th day of March, 1911; that the lessee should erect a building upon the premises, of the kind specified in the lease, to be of the value of $100,000; that the erection of such building should be commenced in good faith within one year from the execution of the lease; and that the lessee should keep the same insured for two thirds of its value. The twelfth stipulation read as follows: "That the said lessee covenants and agrees that within sixty (60) days from the execution of this lease he will execute and deliver to the lessors a bond with a good, safe and reliable surety company as surety

for the sum of six thousand ($6,000) dollars, to insure the lessee carrying out this lease, which bond shall be made to the lessors and in form and conditioned as they may desire, and which must be satisfactory to them, and continue in force as to such surety for not less than one year. * * The lessee further covenants and agrees that not later than sixty-five (65) days before the commencement of the removal of the building which now stands upon the said leased real property, he, the said lessee, will execute and deliver to the lessors a bond with a good, safe and reliable surety company as surety for the sum of fifty thousand ($50,000.00) dollars, covering at least one year and conditioned that said lessee will construct and pay for a building on said leased premises as hereinbefore provided, which bond shall be made to the lessors and in form and conditioned as they may desire and to be satisfactory to them. In the event that the liability of such surety on such last-named bond should not continue until the full completion of said building as herein provided, then said lessee shall renew said bond for like time, in the same form and with same or like surety satisfactory to the lessors." Pursuant to the terms of the lease, duplicates thereof were placed with the bank in escrow, to be delivered when Frank E. Smith should execute to the plaintiffs the bond with surety, as provided for.

On August 13, 1910, according to the agreement, defendant Frank E. Smith executed and delivered to plaintiffs the following bond:

"Pacific Surety Company of California.

"Whereas, on May 28th, 1910, a written lease was executed by Kate Strode and Rose Bridges and Anna Herrall and V. K. Strode and J. B. Bridges, Jr., as lessors, and Frank E. Smith, as lessee, in and by which said lessors leased to said lessee lot five (5) in block nineteen (19) of the city of Portland, in the

county of Multnomah, and state of Oregon, for the term of thirty-five (35) years from and after October 1, 1910, at the rental and on the terms and conditions therein stated, a copy of which lease is hereto attached and hereby made a part hereof; and

"Whereas, it was and is provided in and by said lease that said lessee will, within 60 days from the date of its execution, execute and deliver to said lessors a bond with a good and safe and reliable surety company as surety for the sum of six thousand ($6,000) dollars, to insure said lessee carrying out said lease, and that said bond shall be in form and conditioned as said lessors may desire and must be satisfactory to them; and

"Whereas, it is further provided in and by said lease that said lessee shall, at his own sole cost and expense, erect and place upon said leased property a building of the kind and in the time and manner stipulated therein, and that the erection of said building shall be commenced within one year from the date of the execution of said lease; and

"Whereas, it is further provided in and by said lease that said lessee shall, not later than sixty-five (65) days before the commencement of the removal of the building now standing upon said leased property, which will necessarily be not less than sixty-five (65) days before the commencement of the erection of said new building to be erected and placed by said lessee upon said leased property, execute and deliver to said lessors a bond, with a good and safe and reliable surety company as surety for the sum of fifty thousand ($50,000) dollars, in form and conditioned as provided for in said lease and particularly conditioned that said lessee will construct and pay for said new building on said leased property as in said lease provided; and

"Whereas, it is further provided in said lease that said lessee shall, in addition to other payments therein provided for, pay the general taxes on said leased property for the year 1910 and pay the same prior to March 15th, 1911; and * *

"Whereas, conditions in the city of Portland at the time of and ever since the execution of said lease were and still are most favorable for the owners of real property in the same general neighborhood and of the same general character as said leased property securing and making advantageous and profitable leases of their real property, and by reason of said execution of said lease and the giving of this bond said lessors have and do tie up said leased property in such manner and for such time as to lose many favorable opportunities of making advantageous and profitable leases thereof to other parties. than said lessee, and said lessors were induced and persuaded to so execute said lease and so place the same in escrow because and by reason of said provision therein for the execution and delivery to them by said lessee of said fifty thousand ($50,000) dollar bond to secure the erection of said new building on said leased property and said provision therein for the payment by said lessee of said 1910 taxes on said leased property; and

"Whereas, because of the facts recited in the last preceding paragraph hereof and the fact that it might be claimed by said lessee that it could not be determined until at or near the expiration of said thirty-five year term of said lease to what extent said lessors would be damaged by the failure of said lessee to execute and deliver said fifty thousand ($50,000) dollar bond and erect said new building as provided in said lease, and for many other reasons, the damages which would be sustained by said lessors if said lessee should fail to execute and deliver said fifty thousand ($50,000) dollar bond as provided for in said lease would be uncertain and incapable of reasonable estimation or definite calculation, and the damages which would be sustained by said lessors if said lessees should fail to pay said 1910 taxes as provided in said lease would likewise be uncertain and incapable of reasonable estimation or definite calculation; and

"Whereas, it has been and is hereby agreed by and between said lessors and said lessee and the surety

hereinafter named that said lessors would be damaged to the extent of not less than four thousand ($4,000) dollars if said lessee should fail to so execute and deliver said fifty thousand ($50,000) dollar bond, and said lessors and said lessee and said surety have agreed and do hereby agree upon four thousand ($4,000) dollars as and for fixed and stipulated and liquidated damages to said lessors arising from a failure of said lessee to so execute and deliver said fifty thousand ($50,000) dollar bond; and

"Whereas, said lessors and said lessee and said surety have agreed and do hereby agree that said lessors will be further damaged to the extent of not less than the amount of said taxes if said lessee fails to pay said 1910 taxes as provided in said lease and have agreed and do hereby agree upon the amount of said taxes as and for fixed and stipulated and liquidated damages to said lessors arising from a failure of said lessee to so pay said 1910 taxes as provided in said lease:

"Now, therefore, we, Frank E. Smith, said lessee, as principal, and the Pacific Surety Company, a corporation, organized and existing under and by virtue of the laws of the state of California, and authorized and empowered under the laws of the state of Oregon, to become surety on bonds, undertakings, etc., as surety, do hereby jointly and severally covenant and agree with said lessors as follows:

"First. That if said lessee fails to pay said 1910 taxes of said leased property as provided in said lease, we, and each of us, will, on demand, pay to said lessors the amount of said taxes as and for fixed and stipulated and liquidated damages sustained by said lessors by reason of said lessee's failure; but in no event shall said surety be required to pay said lessors more than two thousand ($2,000) dollars under and by reason of this paragraph of this bond.

"Second. That if said lessee fails to procure the execution and delivery to said lessors of said fifty thousand ($50,000) dollar bond as provided in said

lease, we, and each of us, will, on demand, pay to said lessors the sum of four thousand ($4,000) dollars as fixed and stipulated and liquidated damaged sustained by said lessors by reason and on account of such failure.

"Third. If said lessors should prior to the expiration of the time required by said lease for the execution and delivery of said fifty thousand ($50,000) dollar bond forfeit or terminate said lease or evict said lessee from or re-enter or retake possession of said leased property because or by reason or on account of any breach of or default in the performance of any of said lessee's covenants or agreements contained in said lease other than said covenant to pay 1910 taxes and said covenant to furnish said fifty thousand ($50,000) dollar bond, said forfeiture or termination or eviction or re-entry or retaking of possession shall not release or in any way lessen the liability of said lessee or said surety under this bond or be any defense to any suit or action on this bond; and, notwithstanding any such forfeiture or termination or eviction or re-entry or retaking of possession said lessee and said surety shall be liable hereunder as hereinbefore provided in the sum of not more than 2 thousand ($2,000) dollars for failure to pay said 1910 taxes and in the sum of four thousand ($4,000) dollars for failure to furnish said fifty thousand ($50,000) dollar bond.

"And it is further covenanted and agreed that no granting by said lessors of any waiver of or any extension of time for the performance of any act or payment of any sum required to be performed or paid by said lessee in or by said lease shall be taken or deemed to be a release or discharge of said surety from this bond, and that no failure of said lessors to notify said surety of any breach of said lease by said lessee shall work a release or discharge of said surety from this bond.

"Now, if said Frank E. Smith, as principal, shall faithfully perform the conditions of the above agree-

ment, then this obligation shall be null and void, otherwise to remain in full force and effect.

"In witness whereof, the said principal has hereunto set his hand and seal, and the said Pacific Surety Company has caused these presents to be signed by its attorney in fact and its resident assistant secretary, regularly empowered thereunto, and its corporate seal to be attached hereto, this 13th day of August, A. D. 1910.

"[Signed]   FRANK E. SMITH.   [Seal.]

"PACIFIC SURETY COMPANY,

"By L. R. CENTRO,

"Res. Asst. Secy. and Atty. in Fact.

"Signed, sealed, and delivered in presence of:

"Attest: ERNEST W. HARDY,

"Atty. in Fact.

"H. F. ANTHONY,

"Res. Asst. Secy.

"[Corporate Seal]."

One of the duplicates was delivered to defendant Frank E. Smith pursuant to the terms of the lease. On the 1st day of October he entered into possession of the premises and retained the same until after the 15th day of March, 1911.   There was duly assessed on the real property described in the lease the sum of $3,220.80 for general taxes for the year 1910, which became due and payable in February, and until and after the 15th day of March, 1911.   Defendant Frank E. Smith failed and neglected to pay such taxes on or prior to the 15th day of March, 1911, or at any time, or any part thereof, on account of which plaintiffs were compelled to and did subsequent to the 15th day of March, 1911, pay the same.   Plaintiffs demanded of each of the defendants the payment of $2,000 as stipulated and liquidated damages upon the failure to pay the taxes, and the same is now due to the plaintiffs for a breach of the covenant for the payment of the taxes provided for in the bond and writing obligatory.

For a second and further cause of action, after setting out the lease and bond, plaintiffs allege that the same were executed and delivered; that the defendant Frank E. Smith failed and neglected to make, execute or deliver to the plaintiffs 65 days before the time for the commencement of the removal of the building standing on the leased premises at the time of the making of the lease, or 65 days before the time for the commencement of the new building provided for in the lease, to be erected by him thereon, or at any time, or at all, the bond for $50,000 provided for in paragraph 12 of the lease; that defendant Frank E. Smith did not construct or commence the construction of the building within one year from the date of the lease as provided for therein, or at any time, or at all; that subsequent to the breach of the covenant on the part of defendant Smith to give the $50,000 bond above referred to the plaintiffs duly demanded that the defendants, and each of them, pay the $4,000 stipulated and liquidated damages provided for in the bond for the failure to execute and deliver the $50,000 bond as aforesaid; that the defendants have failed ever since to pay the same, or any part thereof.

Defendants Frank E. Smith and the Pacific Surety Company filed a demurrer to each cause of action, for the reason that the same did not state facts sufficient to constitute a cause of action. The trial court overruled the demurrers. The defendants, refusing to plead further, stood upon their demurrers, and the court entered judgment for $6,000 as prayed for in the complaint. AFFIRMED.

For appellants there was a brief over the names of *Wilbur, Spencer & Dibble, Mr. C. A. Sheppard, Mr. Thomas H. Crawford,* with oral arguments by *Mr. Schuyler C. Spencer* and *Mr. Crawford.*

For respondents there was a brief and oral arguments by *Mr. Victor K. Strode* and *Mr. Martin L. Pipes.*

MR. JUSTICE BEAN delivered the opinion of the court.

The sole question for our determination is the ruling upon the demurrers. It is contended on behalf of defendants that the provisions in the bond, which are denominated liquidated damages, are as a matter of fact penalties. It will be noticed that the complaint shows a provision in the bond that if the lessee should fail to pay the 1910 taxes on the leased property on or prior to the 15th day of March, 1911, the obligors would on demand pay the lessors the amount of such taxes as and for fixed and stipulated and liquidated damages sustained by the lessors by reason of such failure. But that in no event should the surety be required to pay more than the sum of $2,000 by reason of that stipulation in the bond. As a first cause of action the complaint shows that defendant Smith failed to pay the taxes on or before the specified time, or at any time, and that by reason of such failure plaintiffs were compelled to, and did, after that date pay the same, which amounted to $3,220.80. The bond does not provide that defendants will pay $2,000 for the failure to pay taxes in any event, but only in case the taxes shall equal or exceed that amount. In other words, the bond stipulates the exact amount of the taxes as damages, limiting the amount, however, to $2,000. In *Krausse* v. *Greenfield,* 61 Or. 502, at page 512 (123 Pac. 392, at page 396), Mr. Justice Moore, speaking for this court, said: "In the case at bar, though the damages were liquidated, the compensation agreed upon was just and reasonable. * * The amount awarded is less than the damages sustained, and, this being so, the stipulation in the contract cannot be construed as a

penalty." In view of the fact that, in the case under consideration, it is shown by the complaint that by reason of the failure of defendant Smith to pay the 1910 taxes, the plaintiffs were required to pay the same and were actually damaged in a greater sum than stipulated in the bond, it is not a matter of consequence by what name we designate the damages provided for in such stipulation: *Georgia Land Co.* v. *Flint,* 35 Ga. 226; *Atlantic Trust & Deposit Co.* v. *Town of Laurinburg,* 163 Fed. 690, 692 (90 C. C. A. 274). The allegations in the first cause of action show a breach of the contract, and the damages sustained equal to the amount agreed upon in that provision of the contract. The demurrer was properly overruled.

The second cause of action is for the recovery of $4,000 for the failure of defendant Smith to furnish the $50,000 bond, securing the erection of the building. It is claimed that the complaint is demurrable as to this cause of action, because the $4,000 denominated in the bond as liquidated damages is a penalty. The complaint discloses that the execution of the $50,000 bond was the preliminary step to be taken by the lessee for the construction of an eight-story steel frame building to cover an entire city lot in the center of the business district of the City of Portland. The building was to be valued at $100,000 for insurance purposes, and was to be a modern class A building, with the exposed walls on Third and Alder streets faced with pressed brick. Plaintiffs were to receive $1,500 rental per month for the term of 35 years, or $630,000. The building was to be the property of plaintiffs as part consideration of the lease. In addition to this, the defendants were to pay the taxes, insurance, and city assessments. Failure to give the building bond was in effect a failure to erect the building, for without the bond defendant Smith had no right

to remove the old building, nor to proceed to construct a new one, and the execution of the bond for $50,000 would practically insure the construction of the building. From these facts we are asked to declare as a matter of law from an inspection of the complaint that the damages stipulated in the bond are so excessive as to be a penalty.

1. Unless the court can declare as a matter of law from an inspection of the contract that the damages are so excessive as to. be a penalty, the demurrer should be overruled and the question determined after the answer is filed: *Blunt* v. *Egeland,* 104 Minn. 351 (116 N. W. 653); *De Graff, Vrieling & Co.* v. *Wickham,* 89 Iowa, 720 (52 N. W. 503, 57 N. W. 420); *Hoxsey* v. *Patterson,* 59 Ill. 522; *Wilcox* v. *Walker* (Tex. Civ. App.), 43 S. W. 579; 19 Am. & Eng. Ency. of Law (2 ed.), 423. It is usually a difficult question to determine whether stipulations of this kind are in the. nature of liquidated damages or penalties. Courts usually go no further in laying down fixed rules for determining in all cases whether the stipulation is liquidated damages or a penalty than is necessary for a decision of the particular case under consideration.

2, 3. The question must, therefore, be determined in each case upon the facts and circumstances of the given cause. The intention of the parties to the contract, however, must control, if that can be ascertained. In the construction of contracts, the end to be attained is to ascertain the intention of the parties; and the bond in question is no exception to the rule: *Stratton* v. *Fike,* 166 Ala. 203 (51 South. 874); *Curtis* v. *Van Bergh,* 161 N. Y. 47, 52 (55 N. E. 398).

4. This court and others have announced certain rules which in some cases afford a general guide in construing such stipulations in contracts. In *Krausse* v. *Greenfield,* 61 Or., at page 512 (123 Pac. 395), Mr.

Justice MOORE says: "Compensation, and not penalty, affords the measure usually employed to determine the amount of damages to which a party is entitled by reason of a failure of the adverse party to keep or perform the terms of his agreement. The intention of the parties in this respect is controlling, however, when it satisfactorily appears that, when a written contract was effected, they anticipated the possible injury and fixed upon a just and reasonable sum of money as applicable to the entire consequence that might arise from a breach of the agreement, in which case the damages thus determined upon are recoverable." In *Salem* v. *Anson,* 40 Or. 339, at page 345 (67 Pac. 190, at page 192, 91 Am. St. Rep. 485, 56 L. R. A. 169), Mr. Justice BEAN says: "When the actual damages in case of a breach of the contract must necessarily be speculative, uncertain, and incapable of definite ascertainment, the stipulated sum will be regarded as liquidated damages, and may be recovered as such without proof of actual damages, unless the language of the contract shows, or the circumstances under which it was made, indicate a contrary intention of the parties, or it so manifestly exceeds the actual injury suffered as to be unconscionable." The contract provided for the cancellation of a note and mortgage of $7,500 as liquidated damages for failure to purchase land valued at $24,000. In *Hull* v. *Angus,* 60 Or. 95, at page 107 (118 Pac. 284, at page 288), Mr. Justice BURNETT says: "The principle seems to be from a consideration of all the authorities that, where the parties are competent to contract, are equally masters of the situation, and deal at arm's length, the court of equity will not disturb the measure of damages established by the parties themselves, unless it is so grossly unconscionable and oppressive as to shock the conscience of the court and lead it to believe

that, although so nominated in the bond, in the letter it is not included within the spirit of the contract, or within the contemplation of the parties." In *Morse* v. *Rathburn,* 42 Mo. 594 (97 Am. Dec. 359), there was an agreement to buy land for a purchase price of $9,000, and the contract provided that, if either party should fail to comply with the contract, he would forfeit and pay to the other the sum of $2,000. The court held that this was liquidated damages because it was not so disproportionate to the damages which might be sustained that the court ought to interfere with the expressed intention of the parties. In the case of *Sun P. & P. Assn.* v. *Moore,* 183 U. S. 642 (46 L. Ed. 366, 22 Sup. Ct. Rep. 240), it is plainly declared that the decisions of that court on the doctrine of liquidated damages and penalties lend no support to the contention that parties may not *bona fide* in a case where the damages are of an uncertain nature estimate and agree upon the measure of damages which may be sustained from the breach of a contract: See, also *Williams* v. *Pacific Surety Co., ante,* p. 151 (127 Pac. 145); *Commonwealth* v. *Ginn,* 111 Ky. 110 (63 S. W. 467); *Malone* v. *City of Philadelphia,* 147 Pa. 416 (23 Atl. 628); 19 Am. & Eng. Ency. of Law (2 ed.), 402; 13 Cyc. 97; 1 Sutherland, Damages (3 ed.), 279.

5. The bond under consideration in this case recites as a reason for stipulating as to amount of damages that at the time of the execution of the lease, and from then until the execution of the bond, the conditions in the City of Portland were favorable for the owners of real property to secure profitable leases; that by executing the lease to defendant Smith plaintiffs tied up their property in such a manner and for such a time as to lose many favorable opportunities of making advantageous leases thereof to other parties; that plaintiffs were induced to execute the lease by reason

of the provision therein for the execution to them of the $50,000 building bond; that on account of these circumstances, and because the damages would be uncertain and incapable of reasonable estimation or definite calculation, and because it might be claimed that the damages could not be estimated at all until after the expiration of the 35 years, the sum of $4,000 was agreed upon by the parties as fixed and liquidated damages that would accrue to the plaintiffs from the failure of the lessee to deliver the $50,000 bond. The instrument differs from many in which liquidated damages are stipulated, in that it gives the reasons for so doing. There is no showing in this case that the facts recited in the bond were not correct. In *Blunt* v. *Egeland,* 104 Minn. 351, at page 353 (116 N. W. 653, at page 654), it is said: "The further contention that the damages stipulated by the contract should be treated as a penalty, and hence not recoverable, and further that, inasmuch as the complaint alleges no general or special damages, the plaintiff cannot recover, is not well taken. Whether the damages stipulated by the terms of the contract should be treated as penalty can only be determined when issues are framed and the situation and surroundings of the parties are disclosed. The matter will adjust itself, either when defendants answer or upon the trial, when the court is called upon to pass upon the question. Of course, if the damages stipulated are out of all proportion to the actual injury suffered by plaintiff, the stipulation should be treated as a penalty, and plaintiff limited to the recovery of actual loss: *Taylor* v. *Times Newspaper Co.,* 83 Minn. 523, 527 (86 N. W. 760, 85 Am. St. Rep. 473). But upon the face of the complaint plaintiff is entitled *prima facie* to recover the amount stipulated by the contract. We cannot declare as a matter of law that the damages are so excessive

as to justify the conclusion that the stipulation should be treated as a penalty: *Howard* v. *Adkins,* 167 Ind. 184 (78 N. E. 665).'' To the same effect is the case of *De Graff, Vrieling & Co.* v. *Wickham,* 89 Iowa, 720 (52 N. W. 503). In the case at bar the actual damages in the contemplation of the parties were necessarily speculative, uncertain, and perhaps incapable of definite ascertainment. The plaintiffs, by their contract of lease, practically said to the defendant Smith that they would grant him the privileges of the lease as specified on the conditions that he would make the agreed payments, execute the $50,000 bond, and construct the building provided for; and, in the event of his failure to furnish the $50,000 bond which was preliminary to the construction of the building, he would forfeit $4,000. The transaction was a plain contract which the parties apparently understood and clearly expressed in their writings. Their intention then being plain, there is no good reason for the court to say that the parties meant something other than that expressed in their agreement. The sum fixed does not appear to be, and is not shown to be, disproportionate to either the actual or presumed damages. It does not appear that one party to the contract was a victim of oppression. The loss naturally resulting from non-performance of the stipulation was vague and uncertain, and as declared in the bond itself was a proper subject of contract between the parties. We cannot declare as a matter of law that the damages agreed upon are so excessive as to justify the court in declaring that the stipulation should be treated as a penalty.

It is strongly urged by counsel for defendants that if a minor condition in the bond had been broken, and the plaintiffs had been damaged in the sum of $10, or had paid the taxes one day after the time due, according to the language thereof, the plaintiffs would

have claimed to be entitled to the $6,000 as liquidated damages. Suffice it to say that that is not the case under consideration. It is easy to assume that the amount stipulated would be unreasonable and unconscionable in case of the noncompliance with a minor condition of the obligation. Such an assumption, however, is unnecessary for the determination of this case. Each case must depend upon its own particular facts and not upon assumed facts.

6. It is also contended that the bond is indefinite as to the provision relating to the execution of the $50,000 bond not later than 65 days before the commencement of the removal of the old building now standing upon the leased property, which would necessarily be not less than 65 days before the commencement of the erection of the new building. But it will be noticed that the bond plainly provides for the commencement of the new building within one year from the date of the lease.

7. The complaint charges that, after the expiration of the year, the defendant Smith had wholly failed to execute such bond. It was agreed in the lease to execute the building bond with surety, conditioned that the lessee would construct and pay for a building on the leased premises as specified, "which bond shall be made to the lessors and in form and conditioned as they may desire and which must be satisfactory to them." It is contended on behalf of defendants that this is too indefinite for enforcement. It therefore appears that the substance of the condition of the bond is specified in the contract. The plaintiffs, under these terms, would have the right to demand a bond so framed that the conditions would embrace those specified in the lease, and one so plain as to form that there would be no likelihood of nonenforcement on account of form. They would have been bound to be

satisfied with such a bond with a good, safe, and reliable surety. Defendant Smith was given possession of the premises and enjoyed the use thereof for a considerable time, receiving all the advantages from the covenants of the plaintiffs. In determining the question as to the certainty of this contract the court must treat the contract as having been partially performed by the plaintiffs. Defendants have obtained to some extent the advantages of the contract, and are now seeking to avoid the disadvantages. The construction of the building was the main condition of the bond. That condition was expressed with certainty. The plaintiffs could not have arbitrarily refused to accept a bond because it was not in the particular form that they might desire, nor have arbitrarily refused on the ground that it was not satisfactory to them, if, in fact, it did answer the requirements specified.

In the case of *Olympia Bottling Works* v. *Olympia Brewing Co.,* 56 Or. 87, at page 93 (107 Pac. 969, at page 971), the court said: ''While in the case at bar, taking the contract as a whole, it is manifest that the right to continue the agency for the additional five year period constituted a very important part of the consideration for the first five years' service, and the contract having been fully executed, and the consideration thereby fully paid for the first period, more latitude should be allowed in determining whether the provision in the contract, whereby the party paying such consideration was to receive the benefit thereof, than in a case where the option or contract is merely executory, or partly executory'': See, also, *Livesley* v. *Johnston,* 45 Or. 30, 46, 47 (76 Pac. 13, 946, 106 Am. St. Rep. 647, 65 L. R. A. 783) ; *Hawkins* v. *Graham,* 149 Mass. 284 (21 N. E. 312, 14 Am. St. Rep. 422). In 9 Cyc., p. 624, the rule is laid down as follows: ''In the cases above referred to the promisor must act

honestly and in good faith. His dissatisfaction must be actual and not feigned; real and not merely pretended. He must, if a test is necessary to determine fitness, give that test or allow it to be made.''

The demurrers, therefore, were properly overruled. The judgment of the lower court will be affirmed.

AFFIRMED.